**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Montford JOHNSON, Respondent.**

**SCBD No. 2082.**

Supreme Court of Oklahoma.

Nov. 1, 1966.

Delmer L. Stagner, Oklahoma City, for complainant.

Rufus H. Lawson, Oklahoma City, for respondent.

PER CURIAM.

The Executive Council of the Oklahoma Bar Association has recommended to this Court that Montford Johnson, respondent herein, be disbarred from the practice of law in this State, and his name stricken from the roll of attorneys.

Respondent was charged in two counts of violating the Canons of Professional Ethics and with unprofessional conduct in a complaint filed by the Oklahoma Bar Association, dated August 19, 1965.

A hearing was conducted by the trial examiner on February 9, 1966. The respondent was present in person and was represented by his attorney. After the hearing the trial examiner made his report and recommendations to the Executive Council, which considered and approved the report. The matter is now before this Court for review.

In compliance with our duty to review all proceedings requiring disciplinary actions recommended by the Bar Association, we have examined each charge and entered herein such order as in our sound discretion is appropriate.

Count I charged:

"That the respondent having been employed in the month of April, 1962 as an attorney to represent one, Robert E. Coleman to obtain a Class B Common Carrier permit from the Corporation Commission of the State of Oklahoma did, by the use of fraud and chicanery and without the knowledge, consent or authority of its owner, L. A. Mapp of Carnegie, Oklahoma, obtain and bring about the transfer of Class B Common Carrier permit No. 5282 from its true and lawful owner to Consolidated Transport, Inc. on or about June 11, 1962. That said action on the part of the respondent constitutes a failure to properly represent his client, Mr. Robert E. Coleman, fraud and misrepresentation to the Corporation Commission in the State of Oklahoma and caused the rightful owner of the said Class B Common Carrier permit to expend time and money to regain his lawful property."

Count II charged:

"That the respondent has, over a period of time unknown to the complainant but beginning prior to July 29, 1963, and continuing to the present, conducted himself in such a manner as to violate certain canons of ethics of the legal profession in the State of Oklahoma in that he has solicited law business by the use of written communication or circulars not warranted by personal relations. That is to say, that respondent has over the period of time hereinabove mentioned, contacted various individuals having business before the Corporation Commission of the State of Oklahoma, by which contact he has in writing solicited his appointment as service agent in the State of Oklahoma, setting forth in said communication what services he would render and the fee to be charged therefor. * * *"

The complaint charged that respondent was in violation of Canons 15, 27 and 29 of the Professional Ethics as adopted by this Court.

The pertinent facts bearing upon the issues as reflected in the record and report are hereafter set out.

In 1949, the respondent was granted a temporary permit by this Court to serve in the legal department of the Oklahoma Corporation Commission. He was admitted to the practice of law in 1953, and continued as an employee of the Corporation Commission until 1956. After leaving that capacity he sent out letters to carriers holding interstate permits, soliciting appointment as their Oklahoma Service Agent. The solicitation to act as service agent continued intermittently until June 1, 1965. His suggested fee as service agent was $25.00 per annum. The record indicates his solicitations met with some success. In addition thereto, he did legal work for those he was servicing, for which he charged fees.

Respondent maintained that the letters soliciting retention as service agent were justifiable in that he had discussed this method with the investigator of the State Bar Association and that there was no objection. Respondent urged that there was nothing on the letterhead in the letters of solicitation to disclose that he was an attorney.

Respondent's testimony shows that prior to May, 1962, he was contacted by Kenneth Nelson, president of Consolidated Transport, to represent that company in obtaining a Class "B" interstate permit. Thereafter respondent located a permit, which was for sale and notified either Nelson (or Robert E. Coleman, co-owner and successor of Consolidated Transport). This permit was not purchased, even though available. Respondent notified Nelson that a more desirable permit was available from L. A. Mapp for a price of $2,700.00, plus an attorney's fee. Nelson and/or Coleman agreed to the purchase.

Respondent thereafter filed an application to transfer the Mapp permit to Consolidated on May 23, 1962, signing the application as attorney for both Consolidated and Mapp. The Corporation Commission by order transferred the permit to Consolidated in May or June, 1962. In this regard respondent filed the application of transfer as representing both the buyer and the seller.

L. A. Mapp's testimony reflects that over a period of years inquiry had been made to Mapp as to whether his permit was for sale; that he had neither authorized the transfer of his permit nor had respondent ever represented him in any capacity. Mapp also testified that he did not remember who had talked to him about purchasing the permit, and that he did not remember respondent prior to Mapp's discovery that the transfer had occurred. Mapp further testified that he continued to operate under his permit after its purported transfer; that his first knowledge of the transfer was in 1963 when he noticed that his "stickers" did not include the Class

"B" permit, at which time he and his insurance agent contacted the Corporation Commission to then learn that the purported transfer had occurred in 1962.

Respondent's testimony concerning his purported agreement with Mapp was that he had contacted Mapp in regard to the sale of his permit many times; the first was in 1958, in person and the other inquiries were by telephone; that in May, 1962, in a telephone conversation, Mapp made respondent a firm offer to sell the permit for $1,000.00 and authorized respondent to go ahead with the transfer. Thereafter, respondent's testimony was that he notified Mr. Nelson of Consolidated that the permit would cost his company $2,700.00 even though he was to pay Mapp $1,000.00 for it. Mapp emphatically denied any conversation wherein he agreed to sell his permit.

Respondent further testified that he wrote to Mapp advising him of the transfer and that he was ready to settle with him; that he expected to charge Mapp a fee due to necessary work in connection with the transfer and clarification of the permit. Respondent's testimony shows that he did not see or talk to Mapp from May 1962 until 1964, when the matter came before the Corporation Commission. Mapp denied receipt of any letter or letters from respondent.

Respondent admitted that he received $2,700.00 from Consolidated for the transfer and admitted that he did not pay Mapp anything. The evidence also showed that Consolidated paid respondent an additional $300.00 as attorney's fee for handling the transfer. At the hearing before the Corporation Commission, Mapp was reissued the Class "B" permit and Consolidated's permit was canceled.

The trial examiner specifically held that "Respondent did by the use of fraud and without the knowledge and consent or authority of its owner, L. A. Mapp, obtain the transfer of a Class 'B' Common Carrier Permit No. 5282 from its true and lawful owner to Consolidated Transport,

Inc. on or about June 11, 1962," and that respondent was guilty of violating Canon No. 29. Trial examiner also held that respondent was guilty of violating Canon No. 27.

In our review it would be unduly burdensome to seek to point out in detail all the violations of Canons of Professional Ethics, as reflected in the proceedings. We note also that the mere discussion of a few does not presuppose that they are of more gravity than those omitted.

In this instance we have before us a member of the Bar representing the buyer and purporting, without authority, to represent the seller in the sale and transfer of a Class "B" interstate carrier permit before the Corporation Commission; and advertising a service closely related to the practice of law and conducting both the law practice and the service from the same office.

Count I as charged is reflected by the complaint to be violative of Canons 15 and 29.

Cannon 15, in part, provides:

" * * * The office of attorney does not permit, must less does it demand of him for any client, violation of law or any manner of fraud or chicane. * * *"

Canon 29 deals with upholding the honor of the profession and reads in part:

"He should strive at all times to uphold the honor and to maintain the dignity of the profession and to improve not only the law but the administration of justice."

Without elaborating further, we find the evidence sufficiently establishes respondent guilty of violating Canons 15 and 29.

Respondent seeks to justify his position by contending that he had reached an agreement for the purchase of the permit with Mapp and as attorney for Mapp was holding the $1,000.00 for him after the transfer to Consolidated. Respondent's position, by his own contention, was highly unethical and is an admission of unprofessional conduct. The continued retention of the $1,000.00 without explanation as to its whereabouts cannot be condoned.

7 C.J.S. Attorney and Client § 139, p. 976, reads in part:

"The attorney is under a strict duty to keep the client's funds separate from his own, in a place of reasonable safety where they will always be available for immediate payment to the client; and under no circumstances should he use the funds for his own purposes, * * * without his client's knowledge and consent. * * *"

Canon 11 reads in part:

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

Canon 10 reads:

"The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting."

If we consider as true the facts as contended by respondent we would determine that respondent, while representing Consolidated in the purchase of the permit, bought the permit from Mapp for $1,000.00 and resold to Consolidated for $2,700.00, and while also representing Mapp as his attorney, respondent failed to report and account promptly to Mapp for the proceeds which admittedly were due Mapp. We hold by respondent's admissions he violated Canons 10 and 11.

Count II charges respondent with violating Canon No. 27.

It is apparent that after he left his employment with the Corporation Commis-

sion, respondent commenced solicitation of interstate carriers by direct mail seeking to become their service agent. In the letters of solicitation the letterhead did not disclose respondent as being a lawyer. From the evidence we infer that his office address and telephone number thereon were one and the same for the practice of law and his activities as service agent. The evidence fairly shows either directly or indirectly that this contact in some instances, resulted in respondent performing legal services in addition to becoming service agent.

■ There is no prohibition against a lawyer which confines or limits the practice of law to the exclusion of interest in another business or businesses. There is a prohibition against a lawyer conducting another business in such manner that by the advertisement of the other operation, he derives law business. Particularly is this applicable to one who has both a law office and another business in the same office and advertises the non-legal service or commodity. We hold respondent was in violation of Canon No. 27 under the circumstances herein presented.

■ We consider it unnecessary to further lengthen this opinion. Our conclusion heretofore has been announced. The gravity of the respondent's offenses, and the certainty of the proof, fully justifies approval of the recommendation of the Executive Council of the Oklahoma Bar Association.

It is hereby ordered that respondent, Montford Johnson, be and is hereby disbarred from the practice of law, his license to so practice is hereby revoked and canceled, and his name stricken from the roll of attorneys.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY and HODGES, JJ., concur.